1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CAROLINE LEE,                              Case No.  2:20-cv-00662-JDP (SS)

12              Plaintiff,                        ORDER GRANTING PLAINTIFF'S MOTION
                                                  FOR SUMMARY JUDGMENT AND
13         v.                                     DENYING COMMISSIONER'S CROSS-
                                                  MOTION FOR SUMMARY JUDGMENT
14    ANDREW SAUL, Commissioner of Social
      Security,                                   ECF Nos. 17 & 18
15
                Defendant.
16

17         Plaintiff challenges the final decision of the Commissioner of Social Security

18    ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under

19    Titles II and XVI of the Social Security Act.  Both parties have moved for summary judgment.

20    ECF Nos. 17 & 18.  The court grants plaintiff's motion for summary judgment, denies the

21    Commissioner's motion, and remands this matter for further administrative proceedings.

22                                    **Standard of Review**

23         An Administrative Law Judge's ("ALJ") decision denying an application for disability

24    benefits will be upheld if it is supported by substantial evidence in the record and if the correct

25    legal standards were applied.  *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th Cir.

26    2006).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it

27    is such relevant evidence as a reasonable person might accept as adequate to support a

28    conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

1

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed her applications for DIB on December 20, 2016, alleging disability beginning June 30, 2012. AR 268-74, 275-83. After her applications were denied initially and upon reconsideration, she appeared and testified at a hearing before an ALJ. AR 120-85, 186-87, 40-82. On July 20, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 17-39. Specifically, the ALJ found that:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity from July 30, 2012, through September 29, 2012, and from June 10, 2016, to the present.

2

3. The claimant has the following severe impairments: status-post neck fusion, lumbar degenerative disc disease, and degenerative joint disease of the hips.

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

\* \* \*

5. Beginning June 10, 2016, after careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, except the claimant can perform postural activities occasionally.

\* \* \*

6. From July 30, 2012 through September 29, 2012, after careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work.

\* \* \*

7. From July 30, 2012 through September 29, 2012 and from June 10, 2016 through the date of this decision, the claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

\* \* \*

8. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2012, through September 29, 2012 and from June 10, 2016 through the date of this decision.

AR 19-33 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request.  She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that the ALJ erred in five ways: first, by erroneously finding that her back conditions did not satisfy Listing 1.04 at step three, ECF No. 17 at 4-6; second, by improperly rejecting her subjective symptom testimony, *id.* at 6-8; third, by improperly rejecting lay witness testimony, *id*. at 8-10; fourth, by rejecting the testimony of her treating physician, *id.* at 10-12; and fifth, by rejecting the testimony of her treating psychiatrist, *id*. at 13-14.  I agree with plaintiff's first argument that the ALJ committed reversable error in his step-three findings.  Because this error warrants remand, I do not address plaintiff's remaining arguments.

The Social Security regulations include a listing of impairments that are deemed severe enough to preclude a person from performing gainful activity.  *See* 20 C.F.R. § 404.1520(d); *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990).  If a claimant shows that they meet all requirements of a listed impairment, the presumption of disability cannot be rebutted, and the ALJ must find disability without proceeding to steps four and five.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

At step three, the ALJ considered whether plaintiff's severe back impairments met or medically equaled in severity one of the impairments at Listing 1.04 for "[d]isorders of the spine."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04; *see* AR 27.  Listing 1.04 compels a finding of disability for an individual with a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture," if the disorder both results in compromise of a nerve root or the spinal cord and is accompanied by the symptoms identified in one of the listing's three subsections—A, B, or C.  *Id.*  As relevant here, Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test."  *Id.*

The ALJ found that plaintiff did not meet these criteria:

> Listing 1.04 requires evidence of nerve root compression.  The evidence of record is devoid of such evidence.  Furthermore, even

> if there was evidence of nerve root compromise, her gait was noted
> as normal (Exs. B1F/14; B7F/65, 73; B8F/25, 49).  The claimant
> had normal range of motion and no tenderness in her
> musculoskeletal system (Ex. B20F/3).

AR 27.  Plaintiff argues that she meets or equals the criteria of 1.04A and that the ALJ's explanation is insufficient to substantiate his contrary findings.  ECF No. 17 at 4-6.  The Commissioner contends that the ALJ's explanation is adequate or, in the alternative, that the ALJ's later recitation of the medical evidence in the course of the RFC analysis provides sufficient support for his step-three findings.  *See* ECF No. 18 at 11-12.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."  *Lewis*, 236 F.3d at 512 (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).  Although the ALJ's findings are cursory, they are not boilerplate: he identifies three factual bases to support his conclusion that plaintiff's conditions do not meet or equal Listing 1.04.  AR 27.  The ALJ only needs to identify and discuss substantial evidence to support step-three findings; such evidence "need not be contained in a particular section of the ALJ's decision."  *Rodriguez v. Kijakazi*, 1:21-CV-00249-JLT-BAM, 2022 WL 4959973, at *5 (E.D. Cal. Oct. 4, 2022) (relying on *Lewis*, 236 F.3d at 513, to hold that the ALJ adequately "discussed and evaluated evidence supporting his conclusion that [the p]laintiff's impairment(s) did not meet listing 1.04(A)," even though the evidence was provided in a different section of the discussion).  Thus, if medical evidence provided elsewhere in the decision adequately supports the step-three findings, the ALJ did not commit reversable error.

In this case, however, the medical evidence does not adequately support the ALJ's findings.  His first finding—that "[t]he record is devoid of . . . evidence of nerve root compression," AR 27—is directly contradicted by evidence presented later in the decision. Discussing the findings of a 2018 MRI, he wrote that plaintiff exhibited "moderate left and right neural foraminal stenosis at C6-7" and "severe right and left neural foraminal stenosis at C5-6 from osteophyles [sic] appearing to entrap the right and left C6 nerves, which could correlate with

1    a right and left C6 radiculopathy."  AR 29 (citing AR 894).  He also noted that the plaintiff's

2    2018 "electromyography showed possible cervical and lumbar radiculopathy."  AR 30.  These

3    statements appear to provide objective medical evidence of nerve root compression, and the ALJ

4    does not reconcile this evidence with his contrary finding.  *See Orcutt v. Kijakazi*, No. 20-16318,

5    2021 WL 5414855, at *1 (9th Cir. Nov. 19, 2021) ("The ALJ's recitation of [the plaintiff's]

6    'diagnostic studies' did not eliminate any of the criteria for Listing 1.04a when her 2014 MRI

7    revealed 'mild left neural foraminal narrowing,' which supports Listing 1.04a's requirement of

8    'evidence of nerve root compression[.]'").

9            The Commissioner concedes that plaintiff's "imaging evidence shows possible nerve root

10   impingement," but argues that such evidence is insufficient to "confirm nerve root impingement."

11   ECF No. 18 at 15.  Nevertheless, courts "review only 'the reasons the ALJ asserts,'" *Orcutt*, 2021

12   WL 5414855, at *1 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)), and the

13   ALJ failed to explain why plaintiff's MRI results showing nerve entrapment did not satisfy

14   plaintiff's burden.

15           The ALJ similarly failed to provide substantial evidence to support the finding that

16   "claimant had normal range of motion and no tenderness in her musculoskeletal system."  AR 27.

17   The lone source cited in support of that claim, which appears several times throughout his

18   decision, is a record from an emergency visit for gastrointestinal distress that included a single

19   line: "Musculoskeletal: Normal ROM, no tenderness, no deformity."  AR 904.  Although the ALJ

20   later catalogued the medical evidence related to plaintiff's back conditions, he provided neither

21   additional citations for this finding nor reasons to prefer a record of emergency treatment for

22   gastrointestinal distress over plaintiff's myriad other records showing pain, tenderness, and

23   limited range of motion.  *See, e.g.*, AR 28 (noting "limited range of motion of her cervical spine

24   and paracervical muscle tenderness . . . [,] decreased cervical extension worse than flexion due to

25   pain . . . [,] tenderness to palpation of her cervical spine muscles with trigger points") (internal

26   citations omitted).[1]

27   —————————————————

28          [1] *See also* AR 29 ("The claimant had limited and/or decreased range of motion of her
     lumbar spines, tenderness, pain, and paralumbar muscle tenderness.  There was tenderness to

1    Finally, although the ALJ provides somewhat more support for the finding that plaintiff's

2    gait appeared normal, he again cited to several other contradictory records and did not explain

3    how he reconciled these ambiguities.  *See* AR 29 ("The claimant limped with her left leg (Exs.

4    B8F/45; B12F/2).  Her gait was noted as antalgic and ataxic (Ex. B8F/45, 53; B9F/2).").  Even if I

5    were to credit the ALJ's finding that plaintiff had a normal gait, it would not defeat plaintiff's

6    claim that her condition meets the criteria of Listing 1.04, subsection A because an "inability to

7    ambulate effectively" is only a criteria of subsection C.  *See* 20 CFR Pt. 404, Subpt. P, App. 1,

8    §§ 1.04A & 1.04C.

9    The Commissioner argues in the alternative that the ALJ's errors were harmless, since

10   plaintiff cannot show that she meets all of the listing's criteria.  ECF No. 18 at 16.  This argument

11   relies on both the contention that plaintiff failed to show nerve root compromise and the

12   characterization of her 2018 MRI as revealing "*possible*" nerve entrapment.  *Id*. at 15 (italics in

13   original).  The actual language of the medical record—"severe right and left neural foraminal

14   stenosis at C5-6 from osteophytes appearing to entrap the right and left C6 nerves," AR 894—

15   provides evidence of nerve compression.  In combination with findings of "neck pain with

16   radiation to the left upper extremity," AR 28, plaintiff met her burden to provide "[e]vidence of

17   nerve root compression characterized by neuro-anatomic distribution of pain."  *See Orcutt*, 2021

18   WL 5414855, at *1 (explaining that an MRI that revealed "mild left neural foraminal narrowing"

19   satisfied the plaintiff's burden to support "Listing 1.04a's requirement of 'evidence of nerve root

20   compression'").  Although the Commissioner does not argue otherwise, the record also supports

21   plaintiff's contention that she met the remaining Listing 1.04A criteria.  In addition to the

22   evidence, discussed above, of "limitation of motion of the spine," the record includes

23   considerable evidence of "motor loss . . . [,] sensory or reflex loss . . . [, and] positive straight-leg

24   raising test."  20 CFR Pt. 404, Subpt. P, App. 1, § 1.04A; *see* AR 28, 29, & 942 (finding

25   _____

26   palpation over L5 and tenderness and fixation upon percussion and palpation over L4 and L5.")
     (internal citations omitted); AR 30 ("The claimant had limited range of motion of her hip joints

27   with moderate pain.  Her left hip range of motion was mildly limited with flexion, adduction, and
     abduction.  She exhibited decreased range of motion, decreased strength, tenderness, and bony

28   tenderness.") (internal citations omitted).

1  numbness of the left shoulder, weakness of the left arm, and motor deficits and decreased reflexes

2  of the left upper extremity); AR 29 (finding motor deficits and decreased reflexes of the left lower

3  extremity, positive left straight-leg raises, and a positive slump test).

4      Given that plaintiff presented evidence that she met all the requirements of 1.04A, the

5  ALJ committed harmful error when he proceeded past step three without adequately "find[ing] at

6  least one of the criteria foreclosed." *See Orcutt*, 2021 WL 5414855, at *1 (citing *Lewis*, 236 F.3d

7  at 513-14).  Accordingly, I will grant plaintiff's motion for summary judgment and remand for

8  further consideration in light of the preceding discussion.  *See Dominguez v. Colvin*, 808 F.3d

9  403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of

10  Social Security, with or without remanding the case for a rehearing, but the proper course, except

11  in rare circumstances, is to remand to the agency for additional investigation or explanation.")

12  (internal quotes and citations omitted).

13      Accordingly, it is hereby ORDERED that:

14      1.  Plaintiff's motion for summary judgment, ECF No. 17, is granted.

15      2.  The Commissioner's cross-motion for summary judgment, ECF No. 18, is denied.

16      3.  The matter is remanded for further proceedings.

17      4.  The Clerk of Court is directed to enter judgment in plaintiff's favor.

18

19  IT IS SO ORDERED.

20

21  Dated:    November 7, 2022

21                                                    _____

22                                                    JEREMY D. PETERSON
                                                      UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28